1    **WO**

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8

9    Leiloni Ivey,                              No. CV-24-02263-PHX-DWL

10                    Plaintiff,                 **ORDER**

11   v.

12   Commissioner of Social Security
     Administration,
13
                    Defendant.
14

15          Plaintiff challenges the denial of her applications for benefits under the Social

16   Security Act ("the Act") by the Commissioner of the Social Security Administration

17   ("Commissioner").  The Court has reviewed Plaintiff's opening brief (Doc. 13) and the

18   Commissioner's answering brief (Doc. 17), as well as the Administrative Record (Docs.

19   11-12, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

20   I.     Procedural History

21          Plaintiff filed applications for benefits on July 15, 2021, alleging a disability onset

22   date of September 7, 2018.  (AR at 17.)  The Social Security Administration ("SSA")

23   denied Plaintiff's application at the initial and reconsideration levels.  (*Id.*)  On November

24   17, 2023, following a telephonic hearing, the ALJ issued an unfavorable decision.  (*Id.* at

25   17-26.)  The Appeals Council later denied review.  (*Id.* at 1-4.)

26   II.    The Sequential Evaluation Process and Judicial Review

27          To determine whether a claimant is disabled for purposes of the Act, the ALJ

28   follows a five-step process.  20 C.F.R. § 416.920(a).  The claimant bears the burden of

proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id*. § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id*. § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

III.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had engaged in substantial, gainful work activity during a portion of the period of alleged disability, by working from

1    November 2021 to January 2022 as a banquet cook at the Silverleaf Club, but that this
2    period of work was not disqualifying because "there has been a continuous 12-month
3    period(s) during which the claimant did not engage in substantial gainful activity." (AR at
4    19-20.)

5        At step two, the ALJ determined that Plaintiff had the following medically
6    determinable impairments: "hernia, depression, thyroid, polycystic ovarian syndrome and
7    thumb dysfunction." (*Id.* at 20.) However, the ALJ concluded that Plaintiff's "physical
8    and mental impairments, considered singly and in combination, do not significantly limit
9    [Plaintiff's] ability to perform basic work activities. Thus, [Plaintiff] does not have a
10   severe impairment or combination of impairments." (*Id.* at 25.)

11       In the course of making this non-severity finding, the ALJ evaluated Plaintiff's
12   symptom testimony, concluding that Plaintiff's "statements concerning the intensity,
13   persistence and limiting effects of [her] symptoms are not entirely consistent for the reasons
14   explained in this decision." (*Id.* at 22.) The ALJ also evaluated opinion evidence from
15   various medical sources, concluding as follows: (1) Dr. Ana Sierra de Aragon
16   ("persuasive"); (2) Dr. Kirsten Sumner ("persuasive"); (3) Dr. Peter Campbell
17   ("persuasive"); (4) Dr. Nicholas Trang ("persuasive"); (5) unspecified state agency medical
18   consultant at the initial level ("persuasive"); and (6) unspecified state agency medical
19   consultant at the reconsideration level ("persuasive"). (*Id.* at 24.) Additionally, the ALJ
20   "considered a Third Party Function report, submitted by the claimant's mother," and
21   concluded that "[t]his report is consistent with the claimant's subjective complaints;
22   however, it is not supported by the greater objective medical evidence of record." (*Id.*)

23       Because the ALJ concluded that Plaintiff did not have a severe impairment, the ALJ
24   did not proceed past step two and determined that Plaintiff was not disabled. (*Id.* at 25.)

25   IV.  Discussion

26       A.    **Separate Consideration Of "Keloids Or Scarring Impairment"**

27       Plaintiff's opening brief purports to raise a single issue on appeal: "The ALJ failed
28   to properly consider and evaluate all impairments at Step Two. The ALJ conducted no

1    evaluation of Ivey's keloids or scarring impairment that develops after Plaintiff undergoes

2    surgical procedures for recurring hernias.  The keloids cause severe abdominal pain that

3    that prevents Ivey from working.  The ALJ also erred by finding Plaintiff's hernia

4    impairment not severe."  (Doc. 13 at 1.)[1]

5        In the Court's view, this is not a single assignment of error.  Rather, Plaintiff is

6    raising two distinct, if related, challenges to the ALJ's step-two analysis: *first*, that the ALJ

7    erred by ignoring one of her impairments, "keloid or scarring impairment," and failing to

8    analyze whether that impairment qualifies as severe; and *second*, that the ALJ also erred

9    by concluding that a different one of her impairments, "hernia impairment," was not severe.

10   For purposes of analytical clarity, the Court will address each issue separately.

11              1.    The Underlying Proceedings

12       In her Function Report, Plaintiff reported that her keloids and scarring were the

13   result of her hernia surgeries and caused her to suffer from pain, swelling, and pulling

14   sensations that prevented her from working: "Due to multiple surgeries I deal with chronic

15   swelling and pain to my abdominal area.  A constant pulling sensation from adhesions and

16   scar tissue this had been going on for years."  (AR at 265.)  Likewise, during the hearing

17   before the ALJ, Plaintiff's counsel grouped together Plaintiff's hernia surgeries and

18   resulting keloids/scarring when describing Plaintiff's symptoms: "[Plaintiff] has had

19   multiple recurring hernias that have required multiple surgeries and have caused her to

20   have significant abdominal pain.  The hernia surgeries have also resulted in recovery

21   periods of several months, where she's mostly bedridden and she's developed major

22   scarring around the areas of the surgery, causing her skin to be hypersensitive to pain and

23   touch. . . .  [Plaintiff's] need for consistent surgical treatment and pain management, due

24   to her multiple recurrent hernias, has left her completely unable to sustain employment at

25   the substantial gainful activity level."  (*Id.* at 61-62.)  During a later portion of the hearing,

26   Plaintiff's counsel again grouped together Plaintiff's hernias and resulting keloids/scarring

27

28   _____

     [1]    As a remedy, Plaintiff seeks an order "remanding the matter for the payment of
     benefits, and alternatively for a new administrative hearing."  (*Id.* at 21.)

1   when attempting to challenge the state agency consultants' findings of non-severity: "She

2   reports . . . to her surgeon every visit, that she's had chronic abdominal pain. . . .  She's had

3   to get those injections for the pain so I know they're steroid injections for painful keloid

4   scars which comes following the surgeries and she takes a lot of recovery time following

5   each of the surgeries and clearly the repairs have not been helping.  She's had to get

6   multiple surgeries over and over again. . . .  [S]he described the pain is like a pulling,

7   chronic swelling pain.  I don't even think she can stand for very long and she said it hurts

8   to breathe and talk.  Every time she goes to her surgeon, she reports she's having abdominal

9   pain . . . ."  (*Id.* at 73-74.)

10              2.    The ALJ's Decision

11  Consistent with this approach, the ALJ acknowledged the existence of Plaintiff's

12  keloids/scarring in the portion of the underlying decision addressing the severity of

13  Plaintiff's hernia impairment:

> ***The claimant alleged disability due to a hernia*** and polycystic ovarian
> syndrome; however, progress notes, dated January 2018 showed the claimant
> as status post repair of a recurrent incisional hernia in April 2019.  A CT scan
> revealed constipation but there was no evidence of a re-herniation.  It was
> noted the claimant's primary care physician started the claimant on
> Neurontin and anti-inflammatories but they were unsuccessful.  ***The
> evidence shows the claimant has had significant hernia surgeries, but
> there's nothing to suggest there is a long-term problem***.  In April 2019, the
> evidence shows the claimant underwent surgery for lysis of ***adhesions with
> an incisional repair***.  The claimant testified she has severe swelling but
> progress notes consistently do not show significant swelling, rather they
> show "mild" swelling on examination. ***Records from Jan 4, 2022 reveal the
> claimant presented with abdominal pain at the site of keloids and prior
> repair of an umbilical hernia.  Of note, the claimant denied any recurrent
> herniation***.  Of particular note, the physician reported that the claimant's
> symptoms were out of proportion of physical findings.  ***As of January 18,
> 2022, records show a prominent scar around the umbilicus at site of a prior
> hernia repair; however it is "Well healed.***"  Office treatment notes showed
> the claimant had surgery done for biologic mesh on May 12, 2023.  The
> claimant had urinary retention, was in a urine catheter, which is already
> removed.  The discharge date not reported.  During this time, the claimant
> was only taking Tylenol and Ibuprofen.  On May 15, 2023, and May 16,
> 2023, the claimant reported she noticed blood in the urine and went back to

the emergency room and was started on antibiotic.  She is now better and still with a "little" pain.  The claimant was prescribed, for constipation - Linzess 290mcg, Miralax and Amitriptyline 50mg QHS for insomnia.  Of particular note, it is noted that both medications working "well" for her.  The undersigned notes the most the claimant's representative could point to when asked why the claimant could not work, the representative responded with the claimant continued to complain of pain between surgeries; however, that is not quantifying the pain or in any way suggesting the level of pain, much less that the level of pain is such that she is unable to do even sedentary work.  Adding to that, is that the claimant went to work when she "had to" when her mom was extremely ill.  The claimant also testified she has a rabbit, as an emotional pet, which she takes care off.  She also reported her hobbies include bi[k]e riding, yoga and poetry; however, the claimant reported she could no longer bike ride and do yoga, she did testify she still participated in yoga.  ***The undersigned finds it difficult to conclude the claimant has more than mild limitations on a long-term basis with regards to her history of hernias*** and polycystic ovarian syndrome.  Accordingly, the undersigned finds these conditions are "non-severe" impairments.

(*Id.* at 22, emphases added.)

### 3.    The Parties' Arguments

In her opening brief, Plaintiff contends this analysis was deficient because the ALJ "only loosely referenced [her] keloid impairment when discussing the hernia impairment" and "carried out no analysis of [her] keloids in terms of their severity or medically determinable status," which was necessary because "keloids is a distinctly different impairment than recurring hernias."  (Doc. 13 at 5.)

In response, the Commissioner contends that Plaintiff "can show no error from the ALJ not considering keloids as a separate impairment" because "[t]he Ninth Circuit has found that it is not harmful error for an ALJ to not determine whether an impairment is medically determinable or severe if the impairment's effects are actually addressed within the decision as a whole," "[t]he ALJ considered Plaintiff's complaints of pain, swelling, and other limitations due to abdominal issues," and "Plaintiff fails to point out evidence that is directly and solely connected to keloids that the ALJ did not consider."  (Doc. 17 at

12.)[2]

### 4. Analysis

The Commissioner has the better of this argument. The ALJ expressly acknowledged Plaintiff's keloids and scarring, which were caused by Plaintiff's hernia surgeries, and discussed those conditions in the portion of the opinion analyzing the severity of Plaintiff's hernia impairment. This approach was rational, given that Plaintiff and Plaintiff's counsel also grouped together the conditions when addressing Plaintiff's abdominal pain and swelling, and "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citations omitted).

Alternatively, even assuming the ALJ should have made separate, formal step-two severity findings as to Plaintiff's hernia impairment and as to Plaintiff's keloids and scarring, it is clear in context that the ALJ did not believe Plaintiff's abdominal pain, swelling, and pulling—regardless of their genesis—significantly interfered with Plaintiff's ability to perform basic work activities (*i.e.*, qualified as a severe impairment). As discussed in Part IV.B below, Plaintiff's challenge the sufficiency of the ALJ's analysis as to that issue lacks merit. It follows that any error in failing to make an additional, formal step-two severity finding as to Plaintiff's keloids and scarring was harmless.

### B. **Non-Severity Finding**

#### 1. Legal Standard

At step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a "severe" impairment or combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1290-91 (9th Cir. 1996). In general, "[t]he step-two inquiry is a de minimis screening device to dispose of meritless claims." *Id.* at 1291. *See also Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023) ("Our narrow application . . . places us in good company: nine other circuits have also announced that they view step two as requiring no more than a de minimis showing."). "[A]ny impairment or combination of impairments

---

[2]    Plaintiff did not file a reply brief.

which significantly limits [a person's] physical or mental ability to do basic work activities" is considered "severe."  20 C.F.R. § 404.1520(c).  "Basic work activities are 'abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling.'"  *Smolen*, 80 F.3d at 1273 (citation omitted).  "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quotation marks omitted).  In determining the severity of impairments, the ALJ considers the claimant's testimony, treatment notes, imaging, ADLs, opinion evidence, and any other statements or observations in the record.  20 C.F.R. § 404.1529(a).

### 2.    The ALJ's Analysis

The ALJ identified what the Court perceives to be seven reasons for discrediting Plaintiff's allegations of disabling abdominal pain, swelling, and pulling sensations and concluding that those alleged limitations, even when considered in combination with the limitations from Plaintiff's other impairments, did "not significantly limit [Plaintiff's] ability to perform basic work activities."  (AR at 25.)

The first reason was that Plaintiff's allegations regarding her abdominal issues were inconsistent with the objective medical evidence, including (1) "progress notes [that] consistently do not show significant swelling, rather they show 'mild' swelling"; (2) a physician's note that "the claimant's symptoms were out of proportion of physical findings"; (3) a note that Plaintiff's "prominent scar around the umbilicus" was "Well healed"; and (4) a note that Plaintiff reported she was "now better and still with a 'little' pain."  (*Id.* at 22.)

The second reason was that Plaintiff pursued only conservative treatment for her pain.  (*Id.* ["During this time, the claimant was only taking Tylenol and Ibuprofen."].)

The third reason was that Plaintiff's claims of disabling abdominal pain, swelling, and pulling sensations were inconsistent with her activities of daily living ("ADLs"), which included "restorative yoga" and "return[ing] to school to be a yoga instructor in 2020."

(*Id.*)

The fourth reason was that Plaintiff was, in fact, able to return to work for a period of months during the period of alleged disability. (*Id.* ["Adding to that, is that the claimant went to work when she 'had to' when her mom was extremely ill."].)

The fifth reason was that Plaintiff never "quantif[ied] the pain or in any way suggest[ed] the level of pain, much less that the level of pain is such that she is unable to do even sedentary work." (*Id.*)

The sixth reason was that six different medical sources, all of whom the ALJ deemed persuasive, offered opinions that Plaintiff was "capable of returning to work" and/or "has no severe impairments." (*Id.* at 23-24.)

The seventh reason was that Plaintiff also provided exaggerated testimony regarding some of her other alleged impairments, including her thumb injury and her mental impairments. (*Id.*)

### 3.    The Parties' Arguments

Plaintiff contends she "is disabled, in part, because of keloids or scarring that have developed following her repeated hernia procedures. This impairment produces chronic and severe abdominal pain that impacts [her] capacity to sustain work . . . ." (Doc. 13 at 3-4.) Plaintiff also contends that "after a hernia has been repaired, the keloids develop and become a completely different and significant problem for Plaintiff that is unlike the difficulties associated with hernias." (*Id.* at 6.) Next, Plaintiff summarizes the medical evidence establishing that she does, in fact, have keloids and contends that "the ALJ disregarded the overwhelming evidence that supported the chronic abdominal pain symptoms and skin sensitivity problems described by Plaintiff." (*Id.* at 8-11.) Next, Plaintiff faults the ALJ for "improperly failing to evaluate her specific keloid-related testimony." (*Id.* at 11-12.) Next, Plaintiff argues that the ALJ also erred by determining that her recurring hernias were non-severe because the "medical evidence documented the severity of Plaintiff's hernia impairment" and because her "need for multiple surgical procedures to repair hernias demonstrate[s] how [her] hernias were never resolved or

controlled, and her symptoms remained throughout the disability period." (*Id.* at 14-16.) Next, Plaintiff faults the ALJ for not crediting her mother's testimony regarding her symptoms and limitations. (*Id.* at 16-18.) Next, Plaintiff argues that the ALJ erred by identifying counsel's inability to quantify her pain as a basis for the non-severity finding. (*Id.* at 18.) Next, Plaintiff argues that her pursuit of employment during a portion of the alleged period of disability should not have been viewed as discrediting because this "limited work constituted only a brief period and not a true assessment of [her] ability to sustain work over time as required by SSR 96-8p." (*Id.* at 18-19.) Last, Plaintiff agues that her ADLs, including yoga, were not inconsistent with her symptom testimony because her yoga practice "required no physical activities of any kind." (*Id.* at 19.)

In response, the Commissioner defends the sufficiency of ALJ's step-two determination of non-severity. (Doc. 17 at 4-14.) The Commissioner's essential argument is as follows: "The record shows gaps in treatment and periods during which Plaintiff did not report or exhibit significant symptoms due to her abdominal impairments and that Plaintiff engaged in substantial gainful activity after she alleged her disability began. Unchallenged medical source statements indicate that any work restrictions were temporary, and State agency medical consultants determined that Plaintiff had no severe medically determinable impairments. Thus, the ALJ properly found that Plaintiff's abdominal impairments were not severe." (*Id.* at 4-5.)

### 4.    Analysis

The Court finds no harmful error in the ALJ's step-two finding of non-severity. Although step two "requir[es] no more than a de minimis showing," *Glanden*, 86 F.4th at 843, this does not mean a claimant will always survive step two simply by identifying a medically determinable impairment and claiming to suffer from disabling pain as a result of that impairment. *See, e.g., Nelson v. Kijakazi*, 2023 WL 2182362, *1 (9th Cir. 2023) (affirming step-two non-severity finding where "[t]he treating physician did not specifically state an opinion that Nelson was unable to work during the relevant time period" and noting that "lay testimony alone, without objective medical evidence, could

not establish a severe impairment at step two"). *See generally Hensley v. Kijakazi*, 2023 WL 4700635, *1 n.1 (9th Cir. 2023) ("A non-severe finding at step two will be upheld if it is supported by substantial evidence, and the substantial evidence threshold is not high.") (cleaned up). This is an unusual case in that the ALJ identified a host of reasons for concluding that Plaintiff's abdominal-related impairments did not meet step two's minimal standard and would not significantly limit Plaintiff's ability to perform basic work activities. The ALJ's analysis was rational and supported by substantial evidence, so the Court must affirm.

One of the ALJ's proffered reasons for the non-severity finding was that all six medical sources opined that Plaintiff was "capable of returning to work" and/or "has no severe impairments." (AR at 23-24.) Plaintiff does not acknowledge these opinions, much less challenge the ALJ's basis for determining that each opinion was persuasive. The presence of these unanimous, unchallenged opinions provides support for the ALJ's step-two finding of non-severity. *Hensley*, 2023 WL 4700635 at *1 (concluding that "substantial evidence supports the ALJ's holding that Hensley's mental health impairments were non-severe" where "the state agency's mental health consultants . . . reviewed Hensley's medical record and opined that she did not have a severe mental impairment").

Another of the ALJ's proffered reasons for the non-severity finding was that Plaintiff was able to practice yoga and even attend a yoga-instructor training program during the period of alleged disability. It was rational for the ALJ to conclude that these activities were inconsistent with Plaintiff's extreme allegations of disabling abdominal pain, swelling, and pulling sensations—and, thus, that those alleged symptoms would not significantly limit Plaintiff's ability to perform basic work activities. *See, e.g., Trisdale v. Astrue*, 334 F. App'x 85, 87 (9th Cir. 2009) ("[T]he ALJ noted that Trisdale successfully completed a marketing workshop, won an award for her photography, and regularly takes yoga and exercise classes. These are clear and convincing reasons supporting the ALJ's conclusion that 'claimant's allegations regarding her pain and limitations and their impact upon her ability to work are not fully credible.'"); *Nunes v. Kijakazi*, 2021 WL 3674730,

*7 (E.D. Cal. 2021) ("The ALJ reasonably determined that Plaintiff's ability to engage in yoga, walking, cycling, cooking, cleaning, dusting, driving, shopping, and performing her own activities of daily living without assistance was inconsistent with her with her allegation that she was precluded from all full-time work.").  Although Plaintiff contends her yoga practice was not inconsistent with her testimony because it was "not a physical practice whatsoever" (AR at 77), it was rational for the ALJ to conclude otherwise, particularly where Plaintiff did not merely practice yoga but also attended an instructor-training course.

Another of the ALJ's proffered reasons for the non-severity finding was that Plaintiff was able to return to work as a chef for a period of months after the alleged disability onset date.  Once again, it was rational for the ALJ to conclude that this activity was inconsistent with Plaintiff's professed inability to work due to her abdominal pain, swelling, and pulling sensations.  And although Plaintiff has identified reasons why the ALJ could have construed her post-onset work activity as not inconsistent with her testimony, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citations omitted).

Finally, yet another of the ALJ's proffered reasons for the non-severity finding was that Plaintiff had provided exaggerated testimony with respect to some of her other alleged symptoms—particularly, her thumb-related symptoms and her mental impairments.  In her brief, Plaintiff does not mention this aspect of the ALJ's analysis and focuses narrowly on the ALJ's purported failure to provide an "evaluation of [her] specific testimony of incapacitating keloid scarring."  (Doc. 13 at 12.)  But this approach ignores that the ALJ could permissibly discount the entirety of Plaintiff's symptom testimony once the ALJ determined that she had provided exaggerated testimony regarding her thumb-related symptoms and mental impairments.  *See, e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (recognizing that a "tendency to exaggerate" is a "specific and convincing reason[]" for discrediting a claimant's testimony); *Smolen v. Chater*, 80 F.3d 1273, 1284

(9th Cir. 1996) ("To determine whether the claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider. . . ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid . . . ."). *See generally* 9th Cir. Model Jury Ins. 1.14 ("[I]f you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said.").[3]

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 9th day of September, 2025.

_____
Dominic W. Lanza
United States District Judge

---

[3]    Given these determinations, any errors in the ALJ's other reasons for the non-severity finding were harmless.